# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                               Case No. 21-cr-0256 (WMW/JFD)

                Plaintiff,

v.                                                      **REPORT AND
RECOMMENDATION**

Hugo Escudero,

                Defendant.

---

This case is before the Court on Defendant Hugo Escudero's Motion to Suppress Evidence from Search Warrants (Dkt. No. 25). On November 23, 2021, Mr. Escudero was indicted by a grand jury of this District for possessing with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Dkt. No. 1.) Mr. Escudero timely filed a motion (Dkt. No. 25) to suppress evidence recovered in five searches, each  authorized by a search warrant issued by a Minnesota state court judge. The motion has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

A motions hearing was held before the undersigned on January 24, 2022. At that hearing, the five contested search warrants were introduced into evidence as Prosecution Hearing Exhibits One through Five (Ex. List, Dkt. No. 32). Before the hearing, memoranda of law were received from both Mr. Escudero (Def.'s Mot. Suppress, Jan. 6, 2022, Dkt. No. 25 (hereinafter "Def.'s Pre-Hr'g Mem.")) and the United States (U.S.'s Consol.

Response, Jan., 14, 2022, Dkt. No. 29). Following the hearing, further briefing was submitted by Mr. Escudero (Def.'s Br. Supp. Mot. Suppress, Feb. 14, 2022, Dkt. No. 34 (hereinafter "Def.'s Post-Hr'g Mem.")) and the United States (U.S.'s Post-Hr'g Resp., Feb. 28, 2022, Dkt. No. 39 (hereinafter "U.S.'s Post-Hr'g Mem.")).

For the reasons set forth below, the Court recommends that the Motion to Suppress be **DENIED**.

## THE SEARCH WARRANTS

The five warrants at issue are described in the prosecution's exhibit list and the parties' memoranda as:

(1) Hearing Exhibit One: a Ramsey County tracking warrant authorizing the placement of a mobile tracking device on a red Toyota Sequoia. This warrant was issued on July 29, 2021.

(2) Hearing Exhibit Two: a Ramsey County search warrant, authorizing an examination of the seams of the door and exterior doorknob of a specific apartment on University Avenue for "[e]vidence of drug activity." This warrant was issued on September 16, 2021.

(3) Hearing Exhibit Three: a Ramsey County search warrant for the same apartment involved in Hearing Exhibit Two, plus vehicles, storage areas, outbuildings, and garages associated with that apartment, for controlled substances and evidence of controlled substance sales, such as scales and baggies, as well as the seizure of electronic devices (which, however, would not be searched unless a second warrant authorizing that search was issued). This warrant was issued on September 17, 2021.

(4) Hearing Exhibit Four: A Hennepin County search warrant authorizing the examination of the seams of a specified studio within an event center on University Avenue for "[e]vidence of drug activity." This warrant was issued on September 20, 2021.

(5) Hearing Exhibit Five: A Hennepin County search warrant for the same studio, authorizing a search for controlled substances, plus evidence of controlled substance sales such as scales and baggies, as well as the seizure of electronic

devices (which would not, however, be searched without a second warrant). This warrant was issued on September 21, 2021.

In his pre-motions hearing memorandum, Mr. Escudero made a general claim that each warrant lacked probable cause under a so-called "four corners" review. He also made several specific objections to each warrant. These were made, however, in a series of conclusory statements that were unaccompanied by citation to any legal authority. To take just one example, the officer who applied for the tracking warrant included a statement that "within the last 72 hours . . . your affiant used an ion swab pad to rub the driver's side door handle of the vehicle to obtain possible evidence of narcotics." (Hr'g Ex. 1 at 264).[1] The officer stated in the application for the warrant that, when he performed the ion swab, the vehicle was parked in an area accessible to the public. Mr. Escudero objects that no warrant was obtained for the ion swab, without, however, directing the Court's attention to any case or other authority standing for the proposition that a warrant is needed to swab the door handle of a motor vehicle parked in a public place. (Def.'s Pre-Hr'g Mem. at 1; *see* Def.'s Post-Hr'g Mem. at 2.)[2]

At the January 24 motions hearing, the Court asked Mr. Escudero to assert the specific ways in which he alleged that probable cause was lacking, rather than making a general claim that probable cause was lacking overall in the five warrants. The Court asked

---

[1] The hearing exhibits are bates-stamped in the lower-right corner of each page. The Court uses the bates numbers to refer to specific pages within an exhibit.

[2] Mr. Escudero submitted a pre-hearing memorandum of law of approximately three and one-half pages, and a post-hearing memorandum of just over five pages. Neither memorandum of law cites a single case, statute, court rule, or other legal authority.

Mr. Escudero to make such specific allegations in a post-hearing memorandum to which the United States could respond. Briefing on the suppression motion is now closed, and the Court issues this Report and Recommendation.

## FACTS

The Ramsey County tracking warrant was the first of the warrants under consideration issued. It authorized the placement of a mobile tracking device on a red Toyota Sequoia. (Hr'g Ex. 1.) The warrant is supported by an affidavit prepared by Hennepin County Deputy Sheriff Antonio Patsy, who is assigned to the Investigations Division of the Hennepin County Sheriff's Office. (Hr'g Ex. 1 at 263.) Deputy Patsy stated that he had been working with a confidential informant, and that the confidential informant said that a person known to the confidential informant as Hugo Escudero, believed by the confidential informant to live near the University of Minnesota campus, together with another person, distributed cocaine throughout the Twin Cities. (*Id.*) The confidential informant had provided information in the past that had been specific, which Deputy Patsy illustrated in the application by stating that the information provided had included cell phone numbers, addresses, vehicle information, and descriptions of narcotics dealers. (*Id.*) Deputy Patsy stated that within the preceding 14 days the informant told the deputy that a person known to the informant as Hugo Escudero was in possession of "a quantity of cocaine" and that Mr. Escudero, also within the last 14 days, had offered to sell cocaine to the informant. (*Id.*)

Deputy Patsy learned Mr. Escudero's address, an apartment on University Avenue in Saint Paul. (*Id.* at 264.) While surveilling the apartment building, the deputy saw Hugo

4

Escudero come out of the building,[3] open the driver's door of a red Toyota Sequoia, get something out of the Sequoia, and go back inside the building. (*Id.*) The Sequoia was registered to Hugo Escudero. (*Id.*) Within the 72 hours preceding presentation of the tracker warrant,[4] the deputy swabbed the driver's side door handle of the Sequoia with an ion swab pad. (*Id.*) The warrant application does not explain what an ion swab is, how it detects narcotics, or how accurate the technique is. The swab was analyzed using a device called an "IONSCAN" by a Minnesota National Guard member, who is trained in operating the IONSCAN, and who verified that the machine was operating properly. (*Id.* at 264–65.) The swab was positive for cocaine and PCP. (*Id.* at 265.)

Based on these facts, Ramsey County Judge David Brown issued the tracking warrant on July 29, 2021. (*Id.* at 268.)

In mid-September 2021, about six weeks after receiving the tracker warrant, law enforcement applied for four more search warrants over a period of five days. The affidavits submitted in support of the applications for all four of them contain the information that was in the affidavit for the tracker warrant, summarized above, plus some additional information.

Data from the tracking device showed that Mr. Escudero made frequent, short stops at an event center on University Avenue in Minneapolis. (Hr'g Ex. 4 at 295.) Deputy Patsy had also followed Mr. Escudero to that event center "on numerous occasions while

---

[3] The deputy had encountered Mr. Escudero before, during the execution of a search warrant in 2019. (Hr'g Ex. 1 at 264.)

[4] The warrant was signed on July 29, 2021. (Hr'g Ex. 1 at 266.)

conducting physical surveillance," and a CRI had told the deputy that Mr. Escudero "may" rent a music studio within the event center[5] (*id.*), a supposition the deputy was later able to confirm by interviewing the event center's manager (Hr'g Ex. 5 at 305). Event center management identified for the deputy the studio Mr. Escudero rented, and even gave the deputy the monthly rent amount. (*Id.*).

The CRI who told Deputy Patsy about Mr. Escudero's rental of a studio in the event center also told the deputy that Mr. Escudero used runners to distribute narcotics for him and pointed out one of those runners. The deputy knew the alleged runner from earlier law enforcement encounters in narcotics investigations. (*Id.*) Within the seven days preceding presentation of the warrant application to search Mr. Escudero's apartment (Hr'g Ex. 3), the deputy made a controlled purchase of cocaine from the runner, using yet another CRI to buy the cocaine. (Hr'g Ex. 3 at 286.) Shortly after the controlled buy, Mr. Escudero was electronically monitored going to the residence of the person who was believed to be working for Mr. Escudero, behavior which the deputy averred was consistent with Mr.

---

[5] From reading the affidavit it is not clear whether the CRI who gave Deputy Patsy information about Mr. Escudero renting a music studio is the same CRI whose track record was described in the first affidavit (and then repeated in each of the four subsequent affidavits). If it is a different CRI, then the affidavits give no basis that would justify the deputy in describing the information provided by this second CRI as reliable. However, once Deputy Patsy followed up by obtaining, from the event center's management, information about Mr. Escudero's studio rental, something he could have done with or without the CRI information, the CRI information became no longer necessary to the probable cause determination. Nor does it matter to the probable cause determination that it might have been the CRI information that led Deputy Patsy to make inquiries of management. It simply does not matter what caused the deputy to approach management, but even if it did, both physical and electronic surveillance showed Mr. Escudero making frequent trips to the event center.

Escudero collecting the money from the just-completed controlled buy. (Hr'g Ex. 4 at 295-96.)

Law enforcement also applied for, and received, search warrants authorizing an examination of the doors of Mr. Escudero's apartment and the studio within the event center for evidence of drug activity. (Hr'g Exs. 2, 4.) Both the door of Mr. Escudero's apartment and the door of the event center studio rented by Mr. Escudero were sniffed by narcotics detection dogs, and both dogs alerted to the presence of narcotics. (Hr'g Ex. 5 at 305-06.) Once law enforcement knew the narcotics dogs had alerted to the doors of the apartment and the event center studio, the final two warrants were applied for and issued. Hearing Exhibit Three authorized a search of Mr. Escudero's University Avenue apartment and Hearing Exhibit Five authorized a search of the studio Mr. Escudero rented at an event center on University Avenue. Those warrants had an exception for electronic devices, which could only be collected; a search of any electronic devices found, though, would require a follow-up search warrant.

## ANALYSIS

The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. Whether probable cause for the issuance of a search warrant exists "depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place." *United States v. Faulkner*, 826

F.3d 1139, 1144 (8th Cir. 2016) (citing *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013)). When one court reviews another court's probable cause determinations "we pay 'great deference' to the probable cause determinations of the issuing judge or magistrate, and our inquiry is limited to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

In its post-hearing memorandum of law, the United States summarizes the evidence from the affidavit in support of the tracker warrant for the Sequoia (Hr'g Ex. 1), then, as to each of the remaining four warrants, says that the same probable cause is repeated in the affidavits in support of the applications for those warrants, with some additional facts. (U.S.'s Post-Hr'g Mem. at 10 ("The affidavits for those warrants repeat the probable cause found set forth in the first affidavit, and add additional probable cause based on the specific warrant and evidence generated from other warrants.").) However, that the state court judge had a substantial basis for concluding that probable cause existed to attach a tracking device to the Sequoia (if that is true), does not necessarily mean that the same facts also establish probable cause to check the doors of Mr. Escudero's apartment and studio, or to search those locations.

As to each of these five challenged search warrants, the Court must ask, using the deferential standard of review appropriate when reviewing another judge's issuance of a search warrant, whether the issuing state court judge had a substantial basis for believing that probable cause existed to support issuing a warrant to search a specified location for

specified items. Facts that establish probable cause as to one location might be irrelevant to a probable cause determination as to another location.

Even if this Court concludes, as it does, that one or more of the search warrants was issued without a substantial basis to believe that probable cause exists, the evidence obtained under those search warrants will not be suppressed if law enforcement relied in good faith on the probable cause finding of the issuing judge. In *Leon v. United States*, the Supreme Court held that the exclusionary rule did not apply when the police obtain evidence by acting on "objectively reasonable reliance" on a search warrant. 468 U.S. 897, 922 (1984); *see also Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *Leon*, 468 U.S. at 922). The purpose of the exclusionary rule is to deter police misconduct, and where the police have relied, not on their own assessment of the evidence, but on the probable cause determination of a neutral and disinterested judge, there is no police misconduct, and thus, nothing to deter through application of the exclusionary rule. *Herring*, 555 U.S. at 142; *Leon*, 468 U.S. at 916.

The *Leon* "good-faith" exception will not apply for the following four reasons, even though law enforcement applied to a court for a search warrant, which the court issued:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (quoting *Leon*, 468 U.S. at 923) (cleaned up).

The Court will discuss the five warrants in turn.

## 1. The Tracker Warrant, Hearing Exhibit One

The Supreme Court has held that "[i]t is beyond dispute that a vehicle is an 'effect' as that term is used in the [Fourth] Amendment." *United States v. Jones*, 565 U.S. 400, 404 (2012). Therefore, the "Government's installation of a GPS device on a target's vehicle,[] and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" *Id*. Because a GPS tracking warrant is a search, it must be supported by probable cause. *United States v. Faulkner*, 826 F.3d 1139, 1144 (citing *Jones*, 565 U.S. at 404).

Here, the Ramsey County district judge knew from the affidavit submitted by Deputy Patsy in support of his application for a tracker warrant that the deputy was receiving information from a confidential, reliable informant. Deputy Patsy stated in the affidavit that this informant had, in the past, provided detailed information such as cell phone numbers, addresses, vehicle information, and physical descriptions of narcotics distributors. Deputy Patsy stated that he had independently corroborated the information and had been able to use the information to identify narcotics dealers. An informant's track record of providing accurate information allows that informant's statements to be used to satisfy, partially or wholly, the probable cause standard. *United States v. Morales*, 238 F.3d 952, 953 (8th Cir. 2001) ("Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." ) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)).

The informant told Deputy Patsy that Mr. Escudero had a quantity of cocaine in his possession and that the informant had purchased cocaine from Mr. Escudero within the past 14 days. The informant's description of where Mr. Escudero lived—in either Minneapolis or Saint Paul, near the University of Minnesota campus—was quite broad. Even though Deputy Patsy verified the informant's information when he found Mr. Escudero living on University Avenue, near campus, this was only corroboration of publicly available, "directory" information. It is not the type of inside knowledge of narcotics dealing that bespeaks an accuracy born of being close to the investigative target. The Court finds Deputy Patsy was justified in treating the informant as reliable, however, because of his track record of providing reliable information in other investigations.

The informant also told Deputy Patsy that Mr. Escudero and his brother dealt cocaine throughout the Twin Cities, suggesting that the brothers were able to travel, at least locally. Deputy Patsy confirmed that the red Toyota Sequoia parked outside Mr. Escudero's apartment building was registered to Mr. Escudero, and the deputy saw Mr. Escudero go in and out of the Sequoia (but not drive it). In addition, an ion swab of the Sequoia's door handle was positive for cocaine and PCP.

The question is whether the confidential reliable informant's statement that Mr. Escudero was dealing cocaine throughout the metropolitan area, a recent sale of cocaine to that informant, a 2019 search warrant that turned up illegal drugs, and the positive ion swab of the Sequoia's driver's side door handle gave the state court judge a substantial basis to believe probable cause existed that the Sequoia was being used in drug trafficking.

11

Mr. Escudero argues in his pre-hearing memorandum that no warrant was obtained for the ion swab; that "[t]he application fails to make a sufficient connection between Escudero and the alleged presence of narcotics on the door handles"; that officers did not see Mr. Escudero use the vehicle prior to swabbing; and that the ion swab is "not reliable." (Def.'s Pre-Hr'g Mem. at 1–2.) In sum, "[Mr.] Escudero claims the warrant application must provide more information for the signing judge to determine if an ion swab under these circumstances was conducted properly, what the test actually is, or the accuracy of testing door handles." (*Id.* at 2.) In his post-hearing memorandum, Mr. Escudero adds arguments that the basis of the informant's knowledge was not given, and that there is no information about when the informant obtained the information he passed along to Deputy Patsy; that the information in the affidavit about the discovery of narcotics in a 2019 search did not add to probable cause because "the old search was so long ago"; that officers never saw Mr. Escudero driving the Sequoia; and that too little information was provided about the ion swab's reliability or the training of the operator, and therefore, "[Mr.] Escudero argues a judge should not sign without more information." (Def.'s Post-Hr'g Mem. at 1–3.) Mr. Escudero repeats his assertion that there was no warrant obtained for the ion swab.

Mr. Escudero provides no explanation of the legal significance of any of these arguments, and, as noted above, none of these arguments are supported by citation to legal authority of any type. Mr. Escudero does not provide authority for his claim that a warrant is required before swabbing the door handles of a vehicle parked in a public place.[6] He

---

[6] In general, a vehicle parked in public may be examined without a warrant. *See Cardwell v. Lewis*, 417 U.S. 583, 592 (1974) (holding, "where probable cause exists, a warrantless

similarly provides no legal authority explaining how courts decide how old is too old for using evidence from a former, warrant-supported search, nor does he provide authority for his claim that if an informant's basis of knowledge is not given, it prevents that informant being found reliable, nor does he discuss any cases in which courts have considered the reliability of ion swabs, and so on for each of the arguments Mr. Escudero makes.[7]

In addition, and as the prosecution points out (*see* U.S.'s Post-Hr'g Mem. at 8), several of Mr. Escudero's claims that an item of information was not in the affidavit are flatly wrong. Mr. Escudero contends, for example, that Deputy Patsy did not see him "using" (pre-hearing memorandum) or "driving" (post-hearing memorandum) the Sequoia. But Deputy Patsy's affidavit describes the deputy seeing Mr. Escudero come out of his apartment building, go to the Sequoia, open the driver's door with a key, take something out of the Sequoia, and then go back inside.  (Hr'g Ex. 1 at 264.) On a similar note, the affidavit states that the informant obtained his or her information within the past 14 days. (*Id.* at 263.) While the affidavit states that Deputy Patsy received the information from the informant within the past 14 days—leaving open the possibility that the informant had

---

examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments."). *Cf. United States v. Carter*, No. 20-CR-00035 (MJD/KMM), 2020 WL 6136480, at *5 n.3 (D. Minn. Sept. 18, 2020) (finding undisputed that an ion scan of a townhome's outer door was a search for which a warrant was required), *R. & R. adopted*, 2020 WL 6135901 (D. Minn. Oct. 19, 2020).

[7] *Spinelli v. United States*, 393 U.S. 410, 417 (1969), which some courts read as requiring an informant's "basis of knowledge" to be reliable before a warrant could issue on the basis of information provided by the informant, no matter how persuasive other materials in the warrant application might be, was overruled by *Illinois v. Gates*, 462 U.S. 213, 23–31 (1983), which adopted a more flexible, "totality-of-the-circumstances" approach to evaluating probable cause.

obtained the information long before passing it on to the deputy—the affidavit negates that possibility when it states that Mr. Escudero and his brother offered to sell the informant "a quantity of cocaine" within the "same two-week time period." (*Id.*)

Mr. Escudero's challenges—conclusorily stated, in some instances saying a statement is missing from the affidavits when the statement is actually in the affidavit, and in all cases completely unsupported by citation to legal authority—are simply inadequate for the Court to review. The Court will therefore examine the tracking warrant—and the other four warrants as well—independently, using Mr. Escudero's challenges for guidance to the extent possible.

The Court finds that the information in the affidavit presented to the state court judge in support of the tracker warrant establishes probable cause to believe that Mr. Escudero was distributing cocaine. It is less clear whether it establishes that the Sequoia was being used in furtherance of those cocaine distribution activities, or that use of a tracking device could be expected to generate evidence of cocaine distribution. The information in the tracker warrant affidavit that is relevant to the nexus between narcotics dealing and the Sequoia is sparse, and may be summed up briefly:

- Mr. Escudero dealt cocaine;

- Mr. Escudero dealt cocaine throughout the Twin Cities (implying that Mr. Escudero had a means of transportation);

- During the execution of a 2019 search warrant, Mr. Escudero and his brother were found in possession of narcotics; [8]

---

[8] Mr. Escudero challenges the factual accuracy of this statement, stating that Mr. Escudero's brother took responsibility for most of the narcotics, but Mr. Escudero introduced no evidence to back up his assertion. If Mr. Escudero believed that Deputy Patsy

- A red Sequoia parked outside Mr. Escudero's apartment building was registered to Mr. Escudero;

- Mr. Escudero was seen taking something out of the red Sequoia after using a key to get into the Sequoia; and

- An ion scan of the driver's side door handle of the Sequoia was positive for cocaine and PCP. However, no explanation was given of what an ion scan is, how it detects cocaine, or how reliable it is.

The Court finds that the issuing state court judge did not have a substantial basis for concluding that these facts amounted to probable cause to search the Sequoia because the nexus the search warrant affidavit describes between the Sequoia and narcotics dealing is almost nonexistent. There is no direct evidence, such as physical surveillance, that the red Sequoia was used in the distribution of narcotics. There are no statements from the informant that Mr. Escudero used the Sequoia in furtherance of narcotics dealing. When Mr. Escudero made the cocaine sale to the informant that is mentioned in the affidavit, there is no averment in the affidavit that Mr. Escudero arrived at the sale in the red Sequoia. The affidavit describes only a single instance of Mr. Escudero being in the Sequoia, and on that occasion he merely removed something—the deputy did not say what— from the Sequoia, then went back inside.

---

had deliberately or recklessly omitted evidence—in this case, a statement from Mr. Escudero's brother—that undercut a probable cause finding, the Court would have expected a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), which is the appropriate mechanism for bringing such an allegation to the Court. No such motion was made. The Court does not consider Mr. Escudero's claim that his brother took responsibility of most of the narcotics found in the 2019 search.

Cases in which courts in this circuit have upheld tracker warrants against probable cause challenges involve significantly more information than in this case. *See, e.g. United States v. Thompson*, 976 F.3d 815, 817–18 (8th Cir. 2020) (information consisted of informant reporting that defendant drove his car to Chicago to collect narcotics, traffic stop of defendant in Wisconsin in which marijuana was found in the vehicle, and audio recording of defendant discussing the traffic stop, saying it could have been "much worse" if he had had his "work" with him); *United States v. Bradley*, 924 F. 3d 476, 479 (8th Cir. 2019) (defendant arrived at a controlled buy driving the vehicle for which a tracker warrant was sought); *United States v. Gaye*, No. 14-CV-344 (JRT/FLN), 2015 WL 8751477, at *3 (D. Minn. Dec. 14, 2015) (officers observed defendant committing the crime under investigation while in the vehicle for which a tracker warrant was sought).

The Court further finds, however, that evidence obtained from the tracker warrant need not be suppressed, because Deputy Patsy and his law enforcement colleagues objectively relied on this tracker warrant in good faith. None of the four exceptions to *Leon*'s "good faith" exception apply to Deputy Patsy's reliance on the tracker warrant the court issued. Mr. Escudero claims that the warrant could not have been relied upon in good faith because all five warrants at issue contained "a misrepresentation of [Mr. Escudero's] criminal history that the officers knew or should have known was not accurate." (Def.'s Post-Hr'g Mem. at 6). This is not correct as to the tracker warrant, which does not contain the misstatement – described below at page 18 of this Report and Recommendation - about Mr. Escudero's past narcotics conviction. Therefore, evidence obtained pursuant to that warrant should not be suppressed, notwithstanding that the tracker warrant was issued

16

without evidence amounting to probable cause of a nexus between the Sequoia and narcotics dealing. Mr. Escudero does not claim, and this Court does not find, that the evidence presented to the issuing state court judge was so deficient that law enforcement could not reasonably rely upon it. There was at least some evidence of a nexus between the Sequoia and narcotics dealing, and when the issuing judge authorized the tracker's placement, Deputy Patsy acted in objective good faith when he relied on the issuing court's implicit ratification of the sufficiency of that evidence to establish probable cause.

The Court is also favorably impressed with—and finds it relevant to the question of good faith reliance—the cautious, stepwise approach that Deputy Patsy took to the searches in this case, beginning with a tracker warrant, and then moving, not to full search warrants for premises, but to two warrants merely allowing drug detection dogs to sniff the doors of a premises and a commercial establishment. Only when those preliminary (and court-sanctioned) steps had been taken, and yielded evidence of narcotics trafficking, did Deputy Patsy undertake the serious invasion of privacy—also court sanctioned—of warranted searches of Mr. Escudero's apartment and of a music studio Mr. Escudero rented.

Mr. Escudero's motion to suppress evidence obtained from the search warrant that is in evidence as Hearing Exhibit One should be denied.

### 2. The Warrant Permitting a Search of the Seams of Mr. Escudero's Apartment Door, Hearing Exhibit Two

About six weeks after the tracker warrant was applied for and obtained, Deputy Patsy applied for a search warrant to allow a dog sniff or an ion swab of the outer door area

17

of Mr. Escudero's apartment in a building on University Avenue. (Hr'g Ex. 2 at 279.) Ramsey County District Judge Edward Sheu issued the warrant on September 16, 2021.

The facts supporting probable cause in Deputy Patsy's affidavit in support of his application for this warrant include all of the facts in the tracker warrant affidavit, plus: (1) Within the last two weeks, Deputy Patsy conducted physical surveillance and saw Hugo Escudero and his brother in the same vehicle, making multiple short stops; and (2) within the 72 hours preceding the presentation of the search warrant application, Deputy Patsy conducted a controlled purchase of cocaine, through Hugo Escudero's runner. After the sale, Hugo Escudero was electronically monitored going to the runner's residence for a short period of time, behavior that Deputy Patsy, based on his training and experience, found indicative of Hugo Escudero collecting from the runner the money made in the controlled purchase.

Deputy Patsy also included in this affidavit a claim that Hugo Escudero had a prior federal conviction for distribution of methamphetamine and had served a sentence of incarceration in federal prison as a result. This was not true, as the prosecution concedes. According to the prosecution, Mr. Escudero has a prior *state* conviction for distribution of methamphetamine and served a sentence in a *state* correctional facility.

The Court finds, applying the same standards as above, that this affidavit establishes probable cause to search the outer door seam and door handle of Mr. Escudero's apartment for evidence of narcotics dealing. While it would have been preferable had the affidavit said clearly that Mr. Escudero departed from, and returned to, his University Avenue apartment from the trips he made with his brother, or the trip he made to the runner's

18

residence, the affidavit does state that Mr. Escudero comes and goes frequently from that building. The affidavit also states that Mr. Escudero's vehicle is parked outside the building. In conjunction with the other averments of the affidavit, the issuing judge had a substantial basis for believing that probable cause existed to support issuing the requested search warrant. That is, the totality of circumstances set forth in the affidavit established a fair probability that contraband or evidence of a crime would be found at the seams of the apartment door or on the exterior handle of the apartment door. *See Gates*, 462 U.S. at 238.

Even if the affidavit fell short of establishing probable cause, the *Leon* good faith exception applies and spares evidence collected under the authority of this warrant from suppression. Mr. Escudero states that the officers "should not have relied on the warrant" because of the "glaring error on the face of the application concerning Escudero's criminal history." (Def.'s Post-Hr'g Mem. at 4.)  It is not clear which of the four exceptions to the *Leon* good faith exception Mr. Escudero is arguing applies, so the Court will consider each of the potentially applicable exceptions.

Mr. Escudero could be claiming that the supporting affidavit includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge. There is simply no evidence that Deputy Patsy made this misstatement about Mr. Escudero's criminal record knowingly and intentionally, nor is there evidence of reckless disregard.[9] Again, the cautious, step-by-step approach that

---

[9] Again, if Mr. Escudero believed he had evidence that Deputy Patsy had deliberately made a false statement in his warrant affidavit, or had made a statement with reckless disregard for its truth or falsity, the appropriate course of action would have been to bring this before the Court by a motion for a *Franks* hearing. He did not.

Deputy Patsy took to invasions of Mr. Escudero's privacy militates against any finding of either a knowing and intentional, or a reckless, insertion of a false statement into the warrant affidavit. This very warrant under consideration exemplifies Deputy Patsy's approach; rather than immediately seeking a warrant for Mr. Escudero's residence, he applied for a search warrant that allowed him merely to check the seams of the apartment door for evidence of controlled substance dealing. Nor is it plausible that the difference between a state and a federal controlled substances violation is the type of misstatement that would have misled the issuing judge and caused the issuing judge to sign a warrant that would otherwise be rejected.

Mr. Escudero's motion to suppress evidence obtained from the search warrant that is in evidence as Hearing Exhibit Two should be denied.

### 3.  The Warrant Authorizing a Search of Mr. Escudero's Apartment, Hearing Exhibit Three

After being issued a search warrant to check the door seams of Mr. Escudero's apartment, Deputy Patsy enlisted the assistance of an Airport Police Department officer and his narcotics dog. Pursuant to the authority granted by the search warrant that is in evidence as Hearing Exhibit Two, the dog sniffed the seam of Mr. Escudero's apartment door and alerted to the presence of narcotics.

Deputy Patsy added a paragraph describing the drug-detection dog's certification and the dog's alert to the apartment door to what is otherwise the affidavit for Hearing Exhibit Two and presented it, as part of an application for a warrant to search Mr.

Escudero's apartment, to Ramsey County Judge Adam Yang, who signed it on September 17, 2021.

The affidavit in support of Deputy Patsy's application for a search warrant for Mr. Escudero's apartment provided the issuing judge with a substantial basis to believe the warrant was supported by probable cause to believe that Mr. Escudero was illegally dealing narcotics and that evidence of that dealing would be found in his apartment. In summary:

- A confidential informant told Deputy Patsy that Mr. Escudero and his brother had told the informant that they were in possession of a large quantity of cocaine. Deputy Patsy, as noted above, was justified in treating information received from this informant as reliable[10];

- Physical surveillance of Mr. Escudero's apartment showed Mr. Escudero coming and going from the apartment numerous times over a 30-day period;

- An ion swab of a red Toyota Sequoia owned by Mr. Escudero was positive for the presence of cocaine and PCP. However, as noted above, no explanation of ion swabbing was given, nor was the significance of a positive ion swab spelled out in the affidavit, making it difficult to assess the weight of this evidence;

- A runner who appeared to be working with Mr. Escudero made a controlled sale of cocaine to an informant working with Deputy Patsy. After the sale, Mr. Escudero was electronically monitored going to the runner's residence and staying there a very short time, behavior that Deputy Patsy finds indicative of Mr. Escudero collecting the proceeds of the sale from the runner;

---

[10] The statement, found in Hearing Exhibits One and Two, that Mr. Escudero and his brother had offered to sell the informant cocaine is not present in Hearing Exhibit Three (or in Hearing Exhibits Four and Five). (*Compare* Hr'g Ex. 1 at 263 and Hr'g Ex. 2 at 277, *with* Hr'g Ex. 3 at 285.) No explanation is given for this discrepancy, and Mr. Escudero does not mention it in either his pre-hearing or his post-hearing memorandum. The Court therefore draws no inferences from the statement's absence from Exhibits Three, Four, and Five.

- In 2019, Deputy Patsy executed a search warrant on Mr. Escudero's residence and found cocaine, U.S. currency, and materials useful in narcotics trafficking, such as scales and baggies;

- Within the past 72 hours, Mr. Escudero and the runner arrived at an event center on University Avenue in Minneapolis and stayed a short time, which Deputy Patsy again finds indicative of narcotics dealing; and

- Finally, pursuant to the authority granted under the warrant that is in evidence as Hearing Exhibit Two, a narcotics detection dog positively alerted on the door of Mr. Escudero's apartment.

On these facts, the issuing judge had a substantial basis for believing that probable cause supported the issuance of a search warrant for Mr. Escudero's apartment. Mr. Escudero's motion to suppress evidence found in a warranted search of his apartment therefore should be denied. The Court's conclusion above, that a misstatement concerning the court system (state or federal) in which Mr. Escudero was convicted of a narcotics offense does not require invalidation of the search warrant, also applies to this search warrant.

4. **The Search Warrant Permitting a Search of the Exterior Door Seams of the Studio Mr. Escudero Rented at a University Avenue Event Center, Hearing Exhibit Four**

Three days after the search warrant for Mr. Escudero's apartment issued, Deputy Patsy applied for a warrant authorizing a search of the door seams of a studio that Mr. Escudero rented within an event center on University Avenue in Minneapolis. Hennepin County District Court Judge Luis Bartolomei issued the requested warrant on September 20, 2021.

Deputy Patsy's affidavit in support of his application for this warrant repeated the facts set forth above that were included in the deputy's application for the search warrant

that is in evidence as Hearing Exhibit Three. The warrant application also included the following additional facts:

- Electronic surveillance showed that Mr. Escudero made frequent, short-term stops at the Profile Event Center on University Avenue;

- An informant told Deputy Patsy that Mr. Escudero "may rent a music studio within the Profile Event Center";

- Deputy Patsy also conducted physical surveillance of Mr. Escudero and observed Mr. Escudero go to the Profile Event Center on "numerous occasions"; and

- Deputy Patsy spoke to management of the event center and learned that Mr. Escudero rented Studio 156 within the event center, and paid $415 in monthly rent. Mr. Escudero was the only person on the lease, according to event center management.

These facts gave the issuing judge a substantial basis to believe that the requested warrant was supported by probable cause. Mr. Escudero's motion to suppress evidence found in a dog sniff of the door seams of the exterior door of Studio 156 at the Profile Event Center should be denied accordingly. The Court's conclusion above, that a misstatement concerning the court system (state or federal) in which Mr. Escudero was convicted of a narcotics offense does not require invalidation of the search warrant, also applies to this search warrant.

**5. The Search Warrant for Studio 156 at the Profile Event Center, Hearing Exhibit Five**

Acting on the authority of the search warrant that is in evidence as Hearing Exhibit Four, a narcotics detection dog alerted to the door seams of Studio 156 at the Profile Event Center. Deputy Patsy incorporated that fact into his affidavit and presented a Hennepin

County District judge with an application to search the studio. Judge Luis Bartolomei issued the requested warrant on September 21, 2021.

Other than noting the positive alert by the narcotics dog, nothing new need be said about Hearing Exhibit Five, and for the reasons set forth above, the Court recommends denial of Mr. Escudero's motion to suppress evidence obtained in the warranted search of Studio 156.

Accordingly, **IT IS RECOMMENDED THAT** Mr. Escudero's Motion to Suppress Evidence from Search Warrants (Dkt. No. 25) be **DENIED**.

Date:  March 21, 2022                    *s/ John F. Docherty*
                                         JOHN F. DOCHERTY
                                         United States Magistrate Judge

**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).